Complaint Brought Pursuant to 42 U.S.C. sec. 1983 for False Arrest, False Imprisonment, Malicious Prosecution, Intentional Infliction of Emotional Distress, Conspiracy and Negligence

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABIGAIL RAMOS,

                    Plaintiff,

VERIFIED COMPLAINT
JURY DEMAND AS
TO ALL COUNTS

v.

THE CITY OF NEW YORK,
NEW YORK POLICE DEPARTMENT
POLICE OFFICER CASTALDO (SHIELD# 8577)

                    Defendants.

## INTRODUCTION

ABIGAIL RAMOS ["RAMOS"] a resident of Bronx County, State of New York asserts the following claims against the defendants in the above-entitled action:

1. Violation of 42 U.S.C. 1983: False Arrest

2. Violation of 42 U.S.C. 1983: False Imprisonment

3. Violation of U.S.C. 1983: Excessive Force

4. Assault and Battery

5. Violation of 42 U.S.C. 1983: Malicious Prosecution

6. Intentional Infliction of Emotional Distress

7. Violation of 42 U.S.C. 1983: Conspiracy

8. Negligence

## JURISDICTION

1. This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over claims arising under 42 U.S.C. § 1983.

2. Supplemental jurisdiction over RAMOS' pendent state law claims exists pursuant to 28 U.S.C. § 1367(a).

3. Plaintiff has complied with the requirements of New York General Municipal Law Section 50-H. RAMOS made and served a notice of claim on all municipal defendants, within the time required by New York General Municipal Law Section 50-e. More than thirty days have elapsed since the service of those notices, and no offer of settlement has been made.

## VENUE

1. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the Southern District of New York, the judicial district in which the claims arose, in which RAMOS currently resides, and in which defendants NYPD, namely 48th Precinct, conduct their business and where the underlying incident alleged occurred.

## JURY DEMAND

1. Pursuant to the Seventh Amendment of the United States Constitution, Plaintiff requests a jury trial on all issues and claims set forth in this Complaint.

## **PARTIES**

1. Plaintiff RAMOS is, and at all times material to this Complaint was, a citizen and resident of the State of New York. She resides in Bronx, NY.

2. Defendant City of New York is a properly incorporated municipality for and under the purposes of Monell and its progeny.

3. Police Officer Castaldo ("CASTALDO") at all times since the instant allegations arose was a police officer of the NYPD.

## **FACTS**

1. On or about September 29, 2013 at approximately 4am, RAMOS and her friend Frances Maisonet were having a verbal argument in the vicinity of East 178th Street and Third Avenue.

2. In the midst of the argument, two male officers approached, including Defendant CASTALDO.

3. Upon approaching, CASTALDO inquired as to what the issue was between RAMOS and her friend Maisonet.

4. CASTALDO also accused RAMOS of hitting Maisonet, to which RAMOS denied in any way hitting Maisonet.

5. Due to the false allegation CASTALDO informed RAMOS that he was going to search and then arrest her.

6. RAMOS, asserting her rights to not get searched by a male officer, asked for a female officer to be called to the scene if she was to be searched.

7. Upon refusing to be searched by a male officer, CASTALDO became enraged and exclaimed, "Fuck you, you gay bitch.".

8. After which, CASTALDO pushed RAMOS in her chest.

9. In defense, and in disbelief that she was pushed by a male officer, RAMOS pushed CASTALDO's hands off of her.

10. CASTALDO then proceeded to assault RAMOS, hitting her about her head and body while CASTALDO's partner radioed for back up.

11. CASTALDO eventually was able to subdue RAMOS and handcuffed her behind her back.

12. Despite RAMOS being already subdued and handcuffed, CASTALDO proceeded to mace RAMOS in her face.

13. While RAMOS was convulsing on the ground from having been pepper sprayed in her face, CASTALDO proceeded to punch RAMOS about the face and body .

14. Before RAMOS was handcuffed, she raised her hands to her face to attempt to block her face from the punches CASTALDO was delivering.

15. The arresting officer used excessive force in effectuating the arrest, to wit RAMOS was caused to suffer significant injuries to her body, specifically suffering a fracture of her mid-metacarpal while blocking the punches CASTALDO was delivering to her head and face.

16. RAMOS was escorted to the 48th precinct and charged with Assaulting an Officer.

17. RAMOS was eventually transported to central booking in Bronx County where she was arraigned and charged with Assault in the Second Degree, Assault in the Third Degree and Resisting Arrest.

18. Due to the felony charges, the arraignment judge set bail in the amount of $2000 bond or $1000 cash.

19. Being indigent and unable to post bail, RAMOS was transferred to Rose M. Singer correctional facility on Rikers Island.

20. RAMOS was eventually released on October 4, 2013.

21. Due to her hand still being in excruciating pain, RAMOS went to St Barnabas Hospital where she was diagnosed with the aforementioned fracture.

22. After numerous court appearances, declaring her innocence, RAMOS received an Adjournment in Contemplation of Dismissal (ACD) on July 12, 2016.

23. The matter is scheduled to be dismissed on January 11, 2017

24. NYPD officers, specifically CASTALDO, systematically, and without care or regard for the well-being of RAMOS acted maliciously, purposely, and with intent of causing significant injury causing aid injury to RAMOS

25. Due to the aforementioned injuries, RAMOS still feels pain and discomfort in her hand and continues to receive physical therapy

## ILLEGAL SEIZURE
## OF RAMOS

1. RAMOS was not alleged to have been engaged in any illegality at the time of her arrest.

2. There was no warrant presented for her arrest.

3. No warrant was ever obtained for her arrest.

4. The evidence cannot support any illegality or wrong doing on the part of RAMOS.

5. The officers in question improperly reached a conclusion that RAMOS was engaged in illegality based on insufficient evidence and lacking sufficient cause to make such determination.

6. No evidence was presented in the accusatory instrument of any rationale as to why the officers were NOT limited to the usual requirements of law and sufficient cause to make an arrest of RAMOS.

## DAMAGES

1. The actions of the defendants deprived plaintiff RAMOS of her civil rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and under the laws and Constitution of the State of New York.

2. The unlawful, intentional, willful, deliberately indifferent, reckless, and/or bad-faith acts and omissions of the defendants caused RAMOS to be wrongly seized, maliciously prosecuted, unfairly subjected to illegal searches and cruel and unusual punishment during the course of her prosecution and incarceration.

3. The unlawful, intentional, willful, deliberately indifferent, reckless, negligent, and/or bad-faith acts and omissions of the defendants caused COTTO the following injuries and damages, which continue to date and will continue into the future: multiple physical assaults and batteries, and other physical injuries; pain and suffering; severe mental anguish; loss of educational opportunity; loss of professional opportunity; loss of income; humiliation, indignities and embarrassment; degradation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, personal fulfillment, family relations, reading, television, movies, travel, enjoyment, and expression, for which she is entitled monetary relief.

4. Finally, and more specifically Defendants have caused RAMOS to suffer significant injury to her hand (more specifically, a fracture of the mid-metacarpal) requiring extensive physical therapy and permanent damage to her hand resulting in lack of full range of mobility.

5. All the acts and omissions committed by the defendants described herein for which liability is claimed were done intentionally, unlawfully, maliciously, wantonly, recklessly, negligently and/or with bad faith, and said acts meet all of the standards for imposition of punitive damages.

## COUNT 1

### 42 U.S.C. § 1983 False Arrest of RAMOS

### as Against All Defendants

1. RAMOS hereby incorporates by reference all of the foregoing paragraphs and further

alleges as follows:

2. As against Defendant CASTALDO, RAMOS notes that she was placed in imminent harm by CASTALDO and beaten about the body. Defendant was acting within the scope of his employment as a police officer of the City of New York and was in full uniform at the time of the incident. Furthermore, Defendant drove a vehicle clearly demarked as a NYPD police vehicle.

3. No probable cause existed at the time of the arrest, nor is there a presumption based on indictment as the matter was never indicted.

4. Defendant City of New York, under Monell, is liable under a theories of

I. Officially promulgated policy, under Lanier V. City of Woodburn, 518 F3d 1147, in that the NYPD has been found to have a policy of stop and frisk which illegally targets persons of color for illegal stops searches and seizures of their person. See Floyd v. City of New York, 959 F Supp. 2d 540.

II. IN THE ALTERNATIVE, the above should be deemed a CUSTOM AND PRACTICE of same, Cash v. Department of Adult Probation, 388 F3d 539; Lopez v City of Houston, 2008 WL 437056; Price v. Sery, 513 F3d 962; Marriott v, County of Montgomery, 426 F Sup 2d 1. Here the Courts have noted that generally constructive knowledge of a practice is sufficient for liability. We would ask the Court take judicial notice of Floyd, regarding this custom and practice.

III. IN THE ALTERNATIVE, the above should be clear evidence of a failure to train on the part of Defendant City of New York as clearly officers behave rampantly and in a wonton manner without reprieve. There is without question clear evidence of officers misbehavior and failure to act consciously in their duties. No further training has been implemented as a result, and no further education provided. City of Canton v. Harris, 489 US 381 (here we would argue a clear and obvious need to train given recent incidents, AS WELL AS constructive notice (See Sornberger v. City of Knoxville, 434 F3d 1006). While arguably, there is no obvious need to train officers not to brutally injure, beat, and disfigure citizens the proliferation of such events would clearly seem to state otherwise.

5. As a direct and proximate result of the defendants' actions Ms. COTO was wrongly charged, detained and placed bail upon, and suffered the other grievous and continuing injuries and damages as set forth above.

## COUNT II

### 42 U.S.C. § 1983 False Imprisonment

### Against ALL DEFENDANTS

1. RAMOS hereby incorporates and references all of the foregoingparagraphs and further alleges as follows:

2. Defendants acting individually and in concert, falsely imprisoned RAMOS, thereby depriving her of her Fourteenth Amendment (as incorporated) right not to be illegally seized.

3. Specifically, CASTALDO and his cohorts illegally detained and imprisoned RAMOS for a crime they knew she did not commit, which she denied.

4. RAMOS was aware of her imprisonment.

5. She did not consent to her imprisonment.

6. There was no privilege nor cause.

7. Furthermore, deliberately and recklessly failed to investigate leads pointing toward RAMOS' innocence.

8. CASTALDO is liable as he directly took RAMOS into custody and caused her arrest and detention.

9. Defendant City of New York, under Monell, is liable under the following theories

IV.     Officially promulgated policy, under Lanier V. City of Woodburn, 518 F3d 1147, in that the NYPD has been found to have a policy of stop and frisk which illegally targets persons of color for illegal stops searches and seizures of their person. See Floyd v. City of New York, 959 F Supp. 2d 540. The imprisonment stemming from such claims must inherently be seen as false imprisonment.

V.      IN THE ALTERNATIVE, the above should be deemed a CUSTOM AND PRACTICE of same, Cash v. Department of Adult Probation, 388 F3d 539; Lopez v City of Houston, 2008 WL 437056; Price v. Sery, 513 F3d 962; Marriott v, County of Montgomery, 426 F Sup 2d 1. Here, the Courts have noted that generally constructive knowledge of a practice is sufficient for liability. Here, the Court must clearly note that there is pattern of detainees being held subsequent to bail, and more aptly that custom of NYPD officers is to engage in such reckless behavior causing injury and false imprisonment to citizens.

VI.     IN THE ALTERNATIVE, the above should be clear evidence of a failure to train on the part of Defendant City of New York as clearly officers behave rampantly and rapaciously without reprieve, there is without question clear evidence of officers' misbehavior and failure to act consciously in their duties. No further training has been implemented as a result, and not further education provided. City

of Canton v. Harris, 489 US 381 (here we would argue a clear and obvious need to train given recent incidents, AS WELL AS constructive notice (See Sornberger v. City of Knoxville, 434 F3d 1006). While arguably, there is no obvious need to train officers not to falsely arrest, detain, and imprison citizens given recent trends this may in actuality not be true at all, and seemingly the need has never in actuality been greater.

10. As a direct and proximate result of the defendants' actions RAMOS was wrongly imprisoned, and suffered the other grievous and continuing injuries and damages as set forth above.

## COUNT III

### 42 U.S.C. § 1983 Excessive Force
### As Against All Defendants

1. RAMOS hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

2. Defendants, despite knowing that probable cause did not exist, arrested and prosecuted RAMOS.

3. Excessive force was used, to whit Defendant suffered significant injuries, specifically, a fracture of the mid-metacarpal, at the hands of the officers in question.

4. Case law permits the resistance of an unlawful arrest, given the lack of a presumption of probable cause and lab reports showing no criminality we would present that ANY resistance of this arrest would have been appropriate and as a result and force to meet said resistance must undoubtedly fail the test of legality.

5. Furthermore, there was no finding of guilt in the resistance charge in this matter, and as a result the Court should find given the injuries that force was used, and that said force was unreasonable.

6. CASTALDO is liable as he directly caused the injuries to RAMOS with the assistance of his cohorts.

7. Defendant City of New York, under Monell, is liable under the theory:

   VII.   The above should be deemed a CUSTOM AND PRACTICE of same, Cash v. Department of Adult Probation, 388 F3d 539; Lopez v City of Houston, 2008 WL 437056; Price v. Sery, 513 F3d 962; Marriott v, County of Montgomery, 426 F Sup 2d 1. Here the Courts have noted that generally constructive knowledge of a practice is sufficient for liability. Here there have been a multitude of excessive force claims in this district alone, and more specifically against this defendant... as such the Court should properly take an inference of knowledge against this instant Defendant.

   VIII.  IN THE ALTERNATIVE, the above should be clear evidence of a failure to train on the part of Defendant City of New York as clearly officers behave rampantly and rapaciously without reprieve, there is without question clear evidence of officers' misbehavior and failure to act consciously in their duties. No further training has been implemented as a result, and not further education provided. City of Canton v. Harris, 489 US 381 (here we would argue a clear and obvious need to train given recent incidents, AS WELL AS constructive notice (See Sornberger v. City of Knoxville, 434 F3d 1006). While arguably, there is no obvious need to train officers not to brutally injure, beat, and disfigure citizens the proliferation of such events would clearly seem to state otherwise.

8. As a direct and proximate result of the defendants' actions, COTTO suffered physical harm and injury.

## COUNT IV

## 42 U.S.C. § 1983 Claim for ASSAULT & BATTERY

1. RAMOS hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

2. RAMOS was physically assaulted and battered by CASTALDO, as she was beat about the face and body, and maced.

3. The physical attack was not privileged nor was there any cause for said attack, nor was said physical aggression part of any lawful arrest.

4. CASTALDO is personally liable and professionally liable as a result of personally engaging in this attack.

5. Defendant New York City is liable under a Monell claim as follows:

- As a theory of respondeat superior as to any and all state claims.

- Defendant City of New York, under Monell, is liable under the theory

    IX.    Officially promulgated policy, under Lanier V. City of Woodburn, 518 F3d 1147. In the that the NYPD has been found to have a policy of stop and frisk which illegally targets persons of color for illegal stops searches and seizures of their person. See Floyd v. City of New York, 959 F Supp. 2d 540. Arguably an Illegal stop and search clearly constitute an assault/battery as such we would present prior case law within this District note a history of an official policy, we ask the Court take judicial notice of Floyd.

    X.    IN THE ALTERNATIVE, the above should be deemed a CUSTOM AND PRACTICE of same, Cash v. Department of Adult Probation, 388 F3d 539; Lopez v City of Houston, 2008 WL 437056; Price v. Sery, 513 F3d 962; Marriott v, County of Montgomery, 426 F Sup 2d 1. Here, the Courts have noted that generally

constructive knowledge of a practice is sufficient for liability. We would ask the Court take judicial notice of Floyd, regarding this custom and practice.

XI. IN THE ALTERNATIVE, the above should be clear evidence of a failure to train on the part of Defendant City of New York as clearly officers behave rampantly and rapaciously without reprieve, there is without question clear evidence of officers' misbehavior and failure to act consciously in their duties. No further training has been implemented as a result, and not further education provided. City of Canton v. Harris, 489 US 381 (here we would argue a clear and obvious need to train given recent incidents, AS WELL AS constructive notice (See Sornberger v. City of Knoxville, 434 F3d 1006). While arguably, there is no obvious need to train officers not to brutally injure, beat, and disfigure citizens the proliferation of such events would clearly seem to state otherwise.

## COUNT V
## 42 U.S.C. § 1983 Malicious Prosecution

1. RAMOS hereby incorporates by reference all of the foregoing paragraphs.

2. Defendant City of New York, through its agent the Assistant District Attorney assigned to the matter, maliciously prosecuted RAMOS.

3. To whit, Defendant continued to prosecute RAMOS although they were clear they did not have a case.

4. RAMOS exercised her right to go to trial, but a trial never commenced because the District Attorney's Office continually stated "not ready" due to not being able to secure CASTALDO as a witness; presumably because he did not want to have to explain his actions as to how RAMOS was injured so extensively.

5. RAMOS was charged with a crime; i.e. a prosecution was commenced against her.

6. The prosecution terminated favorably in that the matter was fully dismissed

7. Finally, we allege maliciousness on the part of the People in that they were aware of the fact that the officers involved continually made themselves unavailable presumably because their version of events were untruthful.

8. Defendant City of New York, under Monell, is liable under the theory

- Under Pembaur v. City of Cincinnati, 475 US 469, the Court held that the decision of a final policy maker could constitute official policy. In the instant matter there clearly was a decision to continue prosecution as against COTTO, regardless of if the decision was made at the level of the ADA handling the case or the District Attorney himself, we would present that this individual by definition acted as a final decision maker and as such for Monell purposes liability should properly lie

    XII. Officially promulgated policy, under Lanier V. City of Woodburn, 518 F3d 1147. In that the District Attorneys office regularly prosecutes cases and makes decisions to continue prosecutions as against defendants under the weight of the evidence,

    XIII. IN THE ALTERNATIVE, the above should be deemed a CUSTOM AND PRACTICE of same, Cash v. Department of Adult Probation, 388 F3d 539; Lopez v City of Houston, 2008 WL 437056; Price v. Sery, 513 F3d 962; Marriott v, County of Montgomery, 426 F Sup 2d 1. Here the Courts have noted that generally constructive knowledge of a practice is sufficient for liability.

    XIV. IN THE ALTERNATIVE, the above should be clear evidence of a failure to train as ANY attorney practicing ethically and obeying the basic rules of practice of this State would understand their obligation under Brady and move to dismiss charges

immediately upon a negative test for controlled substance in a matter where the

only charge is possession of said substance.

## COUNT VI

## 42 U.S.C. § 1983 Claim for Supervisory Liability Against CITY OF NEW YORK

1. RAMOS hereby incorporates by reference all of the foregoing paragraphs and further states as

follows.

2. Defendant acted with deliberate indifference, recklessness, and/or gross negligence to the

constitutional rights of citizens by failing to provide adequate training, supervision, and discipline

of its agents, and thereby caused RAMOS' rights to due process, and rights against unlawful

search and seizure, were violated.

3. The deliberately indifferent, reckless, and/or grossly negligent conduct of defendant violated a

clearly established duty.

4. Defendant's actions and omissions proximately and directly caused RAMOS to be wrongly

arrested and prosecuted.

## COUNT VII

## 42 U.S.C. § 1983 Claim for INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1. RAMOS hereby incorporates by reference all of the foregoing paragraphs and further alleges

as follows.

2. By their conduct and under color of state law, defendants and Supervisors had opportunities

to intercede on behalf of RAMOS to prevent a false prosecution, however, no one did.

3. RAMOS was detained and housed in central bookings as well as Rikers Island, FROM September 29, 2013 until October 4, 2013, causing significant and extreme emotional distress given she was brutalized and charged with a crime the evidence clearly now shows she did not commit.

4. RAMOS was subjected to a dark and dirty cell containing filth of all sorts.

5. The accommodations wreaked of urine and other bodily fluids

6. She was not provided food of her choosing.

7. She was not at liberty to leave.

8. Medical care which was requested was denied.

9. The Defendants' failures causing extreme emotional distress causing psychological damage and pain leading to anxiety, depression, lack of sleep, insomnia, pain.

10. As a direct and proximate result of the Defendants' failures, RAMOS was injured and suffered the other grievous and continuing injuries and damages as set forth above.

11. Defendant City of New York, under Monell, is liable under the theory:

    XV.    Officially promulgated policy, under Lanier V. Woodburn, 518 F3d 1147; In the that the NYPD has been found to have a policy of stop and frisk which illegally targets persons of color for illegal stops searches and seizures of their person. See Floyd v. City of New York, 959 F Supp. 2d

    XVI.    IN THE ALTERNATIVE, the above should be deemed a CUSTOM AND PRACTICE of same, Cash v. Department of Adult Probation, 388 F3d 539; Lopez v City of Houston, 2008 WL 437056; Price v. Sery, 513 F3d 962; Marriott v, County of Montgomery, 426 F Sup 2d 1. Here the Courts have noted that generally constructive knowledge of a practice is sufficient for liability. We would ask the Court take judicial notice of Floyd, regarding this custom and practice.

XVII.  IN THE ALTERNATIVE, the above should be clear evidence of a failure to train
on the part of Defendant City of New York as clearly officers behave rampantly
and rapaciously without reprieve, there is without question clear evidence of
officers misbehavior and failure to act consciously in their duties. No further
training has been implemented as a result, and not further education provided. City
of Canton v. Harris, 489 US 381 (here we would argue a clear and obvious need to
train given recent incidents, AS WELL AS constructive notice (See Sornberger v.
City of Knoxville, 434 F3d 1006). While arguably, there is no obvious need to train
officers not to brutally injure, beat, and disfigure citizens the proliferation of such
events would clearly seem to state otherwise.

## COUNT VIII

### 42 U.S.C. § 1983 Civil Rights Conspiracy Claim

1. RAMOS hereby incorporates by reference all of the foregoing paragraphs and further alleges as
follows.

2. Defendants, and others yet unknown agreed among themselves and with other individuals to
act in concert in order to deprive RAMOS of her clearly established Fourth, Fifth, and Fourteenth
Amendment rights.

3. In furtherance of the conspiracy the defendants engaged in and facilitated numerous overt acts,
including, without limitation, the following:

   i.    Defendants illegally detained RAMOS.

   ii.   Defendants maced RAMOS in her eyes

   iii.  Defendants punched RAMOS repeatedly about her head and body.

iv.    Defendants took RAMOS into custody.

v.     She was fingerprinted.

vi.    Caused to be detained

vii.   Was forced to be arraigned

viii.  Was detained on bail

ix.    Was transferred to Rikers Island

x.     AT all times and in ALL ACTIONS Defendants acted in concert, and with a clear intention to act as a single unit in the furtherance of the assault described in this instant complaint.

## COUNT XII

### State Law Claim for Malicious Prosecution
### Against Defendant Castaldo

1. RAMOS hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows:

2. Defendants, despite knowing that probable cause did not exist to arrest and prosecute RAMOS for Assault in the Second Degree and other crimes, acted individually and in concert to cause RAMOS to be arrested and prosecuted for those crimes. The Defendants' conduct violated RAMOS' right pursuant to the Fourth and Fourteenth Amendments of the United States Constitution to be free of unreasonable searches and seizures, and proximately caused his wrongful conviction.

3. Specifically, CASTALDO knew or in the absence of his deliberate and reckless indifference to the truth, should have known of information that probable cause did not exist to arrest and prosecute CASTALDO, including but not limited to the facts that he instigated the physical aggression towards RAMOS.

4. Defendants' actions to deprive RAMOS of her liberty without probable cause were in violation of clearly established constitutional law, and no reasonable police officer would have believed that the defendants' actions were lawful.

5. As a direct and proximate result of the defendants' actions RAMOS was wrongly prosecuted, and suffered the other grievous and continuing injuries and damages as set forth above.

## COUNT XIII

## State Law Claim for Intentional or Reckless Infliction of Emotional Distress

1. RAMOS hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

2. The conduct of defendants in deliberately causing, or recklessly disregarding the risk of causing, the wrongful arrest, prosecution, and incarceration of RAMOS was extreme and outrageous, and directly and proximately caused the grievous and continuing injuries and damages set forth above.

3. Defendants' actions intentionally to inflict emotion distress upon RAMOS were in violation of clearly established law, and no reasonable police officer would have believed that the Defendants' actions were lawful.

## COUNT XIV

### State Law Claim for Negligent Infliction of Emotional Distress

1. RAMOS hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

2. Defendants negligently, grossly, and in breach of their duties owed to RAMOS did not refrain from (a) fabricating testimonial evidence, (b) withholding material, exculpatory and impeachment evidence, (c) failing to conduct a constitutionally adequate investigation, and (d) maliciously prosecuting RAMOS.

3. The Defendants' actions caused RAMOS to suffer physical harm, including physical ailments resulting from the circumstances and duration of his wrongful incarceration, and to fear for her physical safety throughout the period of incarceration.

## COUNT XV

### Respondeat Superior Claim Against CITY OF NEW YORK

1. RAMOS hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

2. At all times relevant to this complaint Defendant RAMOS acted as an agent of, and in the scope of his employment with, Defendant City of New York. The conduct by which CASTALDO committed the torts of malicious prosecution, intentional, or reckless infliction of emotional distress, and negligent infliction of emotional distress was undertaken while CASTALDO was carrying out his routine function as a police officer, and was engaged in such conduct as would have been reasonably expected by, and was in fact foreseen by, his employer.

3. New York City is liable for COOTE's state law torts of malicious prosecution, intentional or reckless infliction of emotional distress, and negligent infliction of emotional distress under the doctrine of respondeat superior.

**WHEREFORE,** Plaintiff COTTO prays as follows:

i.     That the Court award compensatory damages to her and against the defendants, jointly and severally, in the amount of $5,000,000.00

ii.    That the Court award punitive damages to her, and against all non-municipal defendants, in

iii.   An amount, to be determined at trial, that will deter such conduct by defendants in the future;

iv.    For a trial by jury;

v.     For pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims; and

vi.    For any and all other relief to which he may be entitled.

Respectfully submitted,

ABIGAIL RAMOS
By her attorney
July 18, 2016

Conway C. Martindale II
Martindale & Associates, PLLC
380 Lexington Avenue, 17th Floor
New York, NY 10168
212-405-2233

PLAINTIFFS VERIFICATION

The undersigned, being duly sworn, deposes and says that I am the Plaintiff herein, and have
read the foregoing pleading filed on my behalf, and the facts stated therein are true.

ABIGAIL RAMOS

Subscribed and sworn to before me, this 18th day of July 2016

Notary Public

ELLIOT S. KAY
Notary Public, State of New York
No. 02KA6234193
Qualified in Westchester County
Commission Expires Jan 18, 2019